**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT PIKEVILLE**

**CIVIL ACTION NO. 04-313-DLB**

**NANCY SWORD**                                                      **PLAINTIFF**


**vs.**                        **MEMORANDUM OPINION & ORDER**


**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will reverse and remand the Commissioner's decision, as it is not supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Nancy Sword filed an application for a period of disability and disability insurance benefits (DIB) on August 8, 2000. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on February 11, 2002; a supplemental hearing was held on August 16, 2002. The ALJ issued an unfavorable decision on August 29, 2002, finding that Plaintiff was not under a disability. The Appeals Council declined review by letter dated August 12, 2004. The ALJ's decision, therefore, currently stands as the final decision of the Commissioner in Plaintiff's case.

1

Plaintiff, who was 48 years old at the time of the hearing, completed high school, as well as two years of college, and alleges an inability to work beginning on July 14, 2000 due to back disorders (discogenic and degenerative), depression, nerves, bursitis and pain secondary thereto, and nervousness around people.  At the hearing before the ALJ, Plaintiff testified that: she has suffered from bursitis of the spine for approximately 20 years and her treatment has included cortisone shots, prescription Darvocet, and over-the-counter pain relievers; she is plagued by depression and anxiety, which is treated with Prozac and Klonopins; the pain caused by her bursitis (which she characterizes as "constant" and "burning") is concentrated in the lower part of her spine/back, but radiates to different joints (i.e., her shoulder, hand, or knee), and is aggravated by changes in the weather and increased nervousness; she exercises by walking approximately one mile, two or three times per week; she is able to stand/walk/sit for no longer than 30 minutes, lift/carry 10-15 pounds, and bend, stoop, squat, and crawl; her grip strength is normal; and she does not like to be in crowds.

Having exhausted her administrative remedies, Plaintiff filed the instant action on September 9, 2004.  The matter has culminated in cross motions for summary judgment (Docs. #4, 5), which are now ripe for review.

## II.  DISCUSSION

**A.    Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

"Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

Step 1 was resolved in Plaintiff's favor, as the ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time. (Tr. 17). At Steps 2 and 3, the ALJ found that Plaintiff has a severe impairment due to back problems, but that those problems do not meet or medically equal the criteria of any listing in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20). At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a range of light level work. (Tr. 21-22).

3

Specifically, she found that Plaintiff can lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk for 5 hours total in an 8-hour workday, 1 hour without interruption; sit for 8 hours in an 8-hour workday; frequently climb stairs; and occasionally balance, stoop, crouch, kneel, and crawl.  (Tr. 21).

Based on that assessment, the ALJ concluded that Plaintiff is able to return to her past relevant work as a secretary.  (Tr. 22).  Alternatively, the ALJ found that even if Plaintiff's impairments and attendant limitations precluded her from performing her past relevant work activity, there are a significant number of semi-skilled and unskilled jobs she could perform.  (Tr. 22).  This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

## C.    Analysis

The crux of Plaintiff's argument on appeal is that the ALJ erred in concluding that her anxiety and depression do not constitute severe impairments.  In particular, she claims that the ALJ improperly relied upon the opinion of a non-examining psychiatrist over the opinions of a treating psychiatrist and examining psychologist.  Additionally, Plaintiff argues that the medical expert's opinion that the ALJ ultimately adopted was inherently suspect, because he did not have her complete medical records at his disposal.  In response, the Commissioner argues that: 1) Dr. Narola's May 24, 2001 opinion that Plaintiff is "mentally incapacitated" to return to her previous employment improperly invades the province of the ALJ, to whom the ultimate issue of disability is reserved; 2) to the extent Plaintiff relies on Dr. Narola's August 24, 2002 mental RFC assessment, which was not properly before the ALJ, that evidence does not constitute "material" evidence; 3) treatment records from Dr.

4

Narola and Plaintiff's therapist indicate that she responded well to therapy and medication; and 4) Dr. Eric Johnson's psychological evaluation and mental RFC assessment were internally inconsistent and thus, entitled to "little deference" from the ALJ.  For the reasons that follow, the Court finds that Plaintiff's contentions are well-taken and the ALJ erred in concluding at Step 2 of the sequential evaluation that Plaintiff's mental impairments (i.e., depression and anxiety) are not severe.

Plaintiff's history of mental impairments is well-documented in the administrative record.  The record reveals that Plaintiff was first referred to Roy Price, a licensed clinical social worker, by Dr. Samuel King, her primary care physician, in late 1999.  At that time, Plaintiff was taking Klonopin and Celexa, which were prescribed by Dr. King.  Plaintiff had individual therapy sessions with Mr. Price on a bi-weekly basis for approximately one year. Price diagnosed Plaintiff with anxiety disorder (not otherwise specified), major depressive disorder (single episode, moderate), and dependent personality disorder.  (Tr. 144).

Plaintiff was referred to Dr. Eric Johnson for a psychological evaluation by her attorney in October 2000.  (Tr.159).  Dr. Johnson diagnosed Plaintiff with dysthymic disorder, anxiety disorder (not otherwise specified), and dependent personality traits.  (Tr. 163).  He also assigned her a current global assessment functioning (GAF) score of 65. (*Id*.).  His narrative notes indicated:

> It would be expected that the patient would continue to make progress in counseling, although she still has significant symptoms.  She appears to be doing better now than she did previously when she started treatment. Judging by her statements about her supervisors, she would have difficulty relating to supervisory pressure, although [I am] of the opinion that she could get along with co-workers and the general public.  She denies having any significant concentration or memory problems.  She is still depressed and anxious to some extent, but she is better than she was previously ....
> Although her anxiety and depression would make it difficult for her to cope

with work pressures at the present time, it is [my] point of view that from a psychological standpoint she might be able to get back into vocational activity later. At this point, the anxiety and depression by themselves would not absolutely preclude the ability to function in a work setting, although the interaction between these symptoms and her other physical problems might affect her ability to adjust to regular work activities.

(Tr. 163). Dr. Johnson completed a mental RFC form in conjunction with his evaluation, in which in he opined that Plaintiff has a good ability to follow work rules, relate to co-workers, deal with the public, use judgment, understand/remember/carry out simple job instructions, maintain her personal appearance, behave in an emotionally stable manner, and relate predictably in social situations; a fair ability to interact with supervisors, function independently, maintain attention/concentration, and understand/remember/carry out detailed but not complex job instructions; and a poor ability to deal with work stresses, understand/remember/carry out complex job instructions, and demonstrate reliability. (Tr. 164-66). When the ALJ posed these limitations (in addition to the exertional limitations associated with Plaintiff's back problems) to the VE at the first hearing, she responded that Plaintiff would be unable to perform any jobs. (Tr. 341).[1]

After the hearing, the ALJ forwarded Plaintiff's records to a medical expert, Dr. Richard Cohen, for review. (Tr. 284). The ALJ's request for a medical opinion was also accompanied by several interrogatories. (*Id.*). On April 8, 2002, Dr. Cohen rendered his

---

[1] The Court notes for the sake of completeness that the ALJ posed an additional hypothetical question to the VE. In that question, the ALJ adopted the opinions of two state agency physicians, who opined that Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number of rest periods; and respond appropriately to changes in the work setting. (Tr. 173-191, 236-252). The VE responded that even with such limitations, Plaintiff would be able to perform sedentary and light unskilled jobs. (Tr. 340). However, there is no discussion of these limitations in the ALJ's written decision.

6

opinions, concluding that Plaintiff is mildly limited in the each of the three "B" criteria of Listing 12.04, and, therefore, does not suffer from a severe mental impairment. (Tr. 287). Dr. Cohen explained that his opinion was based upon a review of the medial evidence that he had, which "did not include the clinical notes from Plaintiff's psychologist." (*Id*.). Despite this important caveat, the ALJ adopted Dr. Cohen's opinion in finding that Plaintiff's depression and anxiety are non-severe (Tr. 18), and that she is capable of performing other work. (Tr. 22-23).

Plaintiff argues, and the Court agrees, that the ALJ improperly adopted Dr. Cohen's opinion in the face of substantial evidence to the contrary. Generally, in disability proceedings, more weight is accorded to the opinion of a medical source who has examined a claimant, than to a source who has not. 20 C.F.R. § 404.1527(d)(1). A non-examining physician's opinion may, however, be accepted over that of an examining physician when the former clearly states the reasons that his/her opinion differs from that of the latter. *Lyons v. Social Security Admin.*, 19 Fed. Appx. 294, 302 (6th Cir. 2001) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). That condition was not satisfied in this case. In addition, the Court concludes that the ALJ's proffered reasons for adopting Dr. Cohen's opinion are insufficient. In her written decision, the ALJ stated that she gave "greater weight to the opinion of Dr. Cohen because he had the *benefit of reviewing the entire record*, he is a specialist in psychiatry, and he is a medical expert." (emphasis added) (Tr. 22). As noted above, however, Dr. Cohen acknowledged that he was not privy to the treatment records from Plaintiff's treating psychologist. The fact that Dr. Cohen (a records reviewer) was operating at an "informational deficit" casts considerable doubt on his already perfunctory opinion.

7

The Court also concludes that the ALJ did not give adequate consideration to the evidence from Plaintiff's treating psychiatrist, Dr. Jay Narola.  The record indicates that Plaintiff initially consulted Dr. Narola on December 2, 2000 for a psychiatric evaluation.  (Tr. 234).  At that time, Plaintiff reported suffering from depression and nervousness for the previous two years.  (*Id*.).  Dr. Narola noted that her mood was depressed, but her insight and judgment were adequate.  (*Id*.).  He diagnosed Plaintiff with major depressive disorder (single episode, moderate, without psychotic features), anxiety disorder (not otherwise specified), and social and occupational problems (severe).  (*Id*.).  Based on his initial diagnostic impression, Dr. Narola prescribed Plaintiff Prozac and recommended individual short psychotherapy sessions, with psychotropic management, on a weekly basis.  (*Id*.).  Dr. Narola's progress notes from those sessions reveal that while Plaintiff responded well to medication and appeared to make some progress, this progress was anything but consistent.[2]  (Tr. 213-35, 301-303).

Plaintiff claims that the evidence from Dr. Narola, as well as evaluation performed by Dr. Johnson, are sufficient to establish the existence of a severe mental impairment. The Court agrees.  The Sixth Circuit has held that the Step 2 severity regulation is a "de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988).  Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health and Human Serv*., 773 F.2d 85, 90 (6th

---

[2]Dr. Narola's records indicate that Plaintiff's mental stability was disrupted by two traumatic events: 1) she was involved in a serious automobile accident on December 19, 2000, and 2) her father passed away in July 2002.

Cir.1985)).  However, a claim that is "obviously lacking medical merit" can be dismissed if it is "totally groundless solely from a medical standpoint."  *Id.* at 862-63 (quoting *Flarris*, 773 F.2d at 90 n.1).

Plaintiff's claim easily surmounts the "de minimis hurdle" of Step 2.  Nevertheless, despite this substantial evidence of a severe mental impairment, the ALJ found that Plaintiff's "depression and anxiety are controlled with medication, cause no more than minimal impairment, and are[,] therefore[,] nonsevere."  (Tr. 18).[3]   The ALJ's findings do not constitute substantial evidence for the proposition that Plaintiff's depression and anxiety do not rise to the level of a severe impairment.  Accordingly, the Court concludes that this case should be remanded for further proceedings consistent with this Opinion.[4]

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 5) is hereby **DENIED.**

---

[3]Although the ALJ proceeded to evaluate the severity of Plaintiff's alleged mental impairments and rate the degree of functional limitation occasioned thereby (in accordance with 20 C.F.R. § 404.1520a), there is no mention of the opinions of the state agency physicians.  Instead, the ALJ again relied solely on the opinion of Dr. Cohen, which as explained above was erroneous.

[4]In light of the Court's order remanding this case for further proceedings, it need not address: 1) whether Dr. Narola's August 24, 2002 mental RFC assessment qualifies as "new and material" evidence, and 2) whether Plaintiff has a valid justification for failing to incorporate the evidence into the record at the administrative level.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **GRANTED.**

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 30th day of September, 2005.



Signed By:

_**David L. Bunning**_   DB

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\7-04-313-SwordMOO.wpd

10